IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEACON NAVIGATION GMBH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 11-cv-921 (GMS) |
| | ) C.A. No. 11-cv-922 (GMS) |
| CRYSLER GROUP L.L.C., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| BEACON NAVIGATION GMBH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 11-cv-923 (GMS) |
| | ) C.A. No. 11-cv-924 (GMS) |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| BEACON NAVIGATION GMBH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 11-cv-925 (GMS) |
| | ) C.A. No. 11-cv-927 (GMS) |
| GENERAL MOTORS, L.L.C., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| BEACON NAVIGATION GMBH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 11-cv-928 (GMS) |
| AUDI AG, AUDI OF AMERICA, L.L.C. and | ) C.A. No. 11-cv-929 (GMS) |
| AUDI OF AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

| | | |
|---|---|---|
| BEACON NAVIGATION GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 11-cv-930 (GMS) |
| BAYERISCHE MOTOREN WERKE AG, | ) | C.A. No. 11-cv-931 (GMS) |
| BMW OF NORTH AMERICA, L.L.C., and | ) | |
| BMW MANUFACTURING CO., L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| BEACON NAVIGATION GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HONDA MOTOR CO., LTD., | ) | C.A. No. 11-cv-932 (GMS) |
| HONDA NORTH AMERICA, INC., AMERICAN | ) | C.A. No. 11-cv-933 (GMS) |
| HONDA MOTOR CO. INC., HONDA | ) | |
| MANUFACTURING OF ALABAMA L.L.C., | ) | |
| HONDA MANUFACTURING OF INDIANA | ) | |
| L.L.C., and HONDA OF AMERICA MFG, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| BEACON NAVIGATION GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 11-cv-934 (GMS) |
| HYUNDAI MOTOR AMERICA, HYUNDAI | ) | C.A. No. 11-cv-935 (GMS) |
| MOTOR MANUFACTURING ALABAMA, | ) | |
| L.L.C. and HYUNDAI MOTOR COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | |
|---|---|
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 11-cv-936 (GMS) |
| ) | C.A. No. 11-cv-937 (GMS) |
| JAGUAR LAND ROVER NORTH AMERICA ) | |
| L.L.C., JAGUAR CARS LIMITED, and ) | |
| LAND ROVER, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 11-cv-939 (GMS) |
| ) | C.A. No. 11-cv-940 (GMS) |
| KIA MOTORS CORP., KIA MOTORS ) | |
| AMERICA, INC., and KIA MOTORS ) | |
| MANUFACTURING GEORGIA, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 11-cv-941 (GMS) |
| ) | C.A. No. 11-cv-942 (GMS) |
| MAZDA MOTOR CORPORATION and ) | |
| MAZDA MOTOR OF AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 11-cv-943 (GMS) |
| ) | C.A. No. 11-cv-944 (GMS) |
| DAIMLER AG, DAIMLER NORTH ) | |
| AMERICA CORPORATION, MERCEDES- ) | |
| BENZ USA L.L.C., and MERCEDES-BENZ ) | |
| US INTERNATIONAL, INC., ) | |
| ) | |

Defendants.                          )
_____)
BEACON NAVIGATION GMBH,                )
                                       )
         Plaintiff,                    )
                                       )
     v.                                )
                                       )        C.A. No. 11-cv-945 (GMS)
NISSAN MOTOR CO. LTD. and              )        C.A. No. 11-cv-946 (GMS)
NISSAN NORTH AMERICA, INC.,            )
                                       )
         Defendants.                   )
_____)
BEACON NAVIGATION GMBH,                )
                                       )
         Plaintiff,                    )
                                       )
     v.                                )        C.A. No. 11-cv-947 (GMS)
                                       )        C.A. No. 11-cv-948 (GMS)
DR. ING. H.C. F. PORSCHE AG and        )
PORSCHE CARS NORTH AMERICA, INC.,      )
                                       )
         Defendants.                   )
_____)
BEACON NAVIGATION GMBH,                )
                                       )
         Plaintiff,                    )
                                       )
     v.                                )        C.A. No. 11-cv-949 (GMS)
                                       )        C.A. No. 11-cv-950 (GMS)
SAAB AUTOMOBILE AB and SAAB CARS       )
NORTH AMERICA, INC.,                   )
                                       )
         Defendants.                   )
_____)
BEACON NAVIGATION GMBH,                )
                                       )
         Plaintiff,                    )
                                       )
     v.                                )
                                       )        C.A. No. 11-cv-951 (GMS)
FUJI HEAVY INDUSTRIES, LTD., FUJI      )        C.A. No. 11-cv-952 (GMS)
HEAVY INDUSTRIES USA, INC., and        )
SUBARU OF AMERICA, INC.,               )
                                       )
         Defendants.                   )

| | |
|---|---|
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 11-cv-953 (GMS) |
| ) | C.A. No. 11-cv-954 (GMS) |
| SUZUKI MOTOR CORPORATION and ) | |
| AMERICAN SUZUKI MOTOR CORPORATION, ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | C.A. No. 11-cv-955 (GMS) |
| TOYOTA MOTOR CORPORATION, TOYOTA ) | C.A. No. 11-cv-956 (GMS) |
| MOTOR NORTH AMERICA, INC., TOYOTA ) | |
| MOTOR SALES USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 11-cv-957 (GMS) |
| ) | C.A. No. 11-cv-958 (GMS) |
| VOLKSWAGEN AG, VOLKSWAGEN GROUP ) | |
| OF AMERICA, INC. and VOLKSWAGEN ) | |
| GROUP OF AMERICA CHATTANOOGA ) | |
| OPERATIONS, L.L.C., ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| BEACON NAVIGATION GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 11-cv-959 (GMS) |
| ) | C.A. No. 11-cv-960 (GMS) |
| VOLVO CAR CORPORATION and ) | |
| VOLVO CARS OF NORTH AMERICA, L.L.C., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

On October 11, 2011, the plaintiff, Beacon Navigation GmbH ("Beacon"), initiated the

instant actions against the above-captioned defendants[1] (collectively, "the defendants"). (D.I. 1.[2])

Beacon alleges that one or more of the products each defendant manufactures and/or sells infringes

one or more claims of U.S. Patent Nos. 6,029,111 ("the '111 Patent"); 6,360,167 ("the '167

Patent"); 6,374,180 ("the '180 Patent"); 5,819,201 ("the '201 Patent"); 6,163,269 ("the '269

Patent"); 5,878,368 ("the '368 Patent"); and/or 5,862,511 ("the '511 Patent") (collectively, "the

patents-in-suit"). (*See, e.g.*, 11-cv-921 (GMS), D.I. 1 at ¶¶ 9-28.)   Presently before the court are

the defendants' Motions to Transfer[3] each action to the Eastern District of Michigan pursuant to

---

[1] Defendants in the above-captioned actions include: Chrysler Group, L.L.C., Ford Motor Company, General Motors, L.L.C., Audi AG, Audi of America, L.L.C., Audi of America, Inc., Bayerische Motoren Werke AG, BMW of North America, L.L.C., BMW Manufacturing Co., L.L.C., Honda Motor Co. Ltd., Honda North America, Inc., American Honda Motor Co., Inc., Honda Manufacturing of Alabama, L.L.C., Honda Manufacturing of Indiana L.L.C., Honda of America MFG, Inc., Hyundai Motor America, Hyundai Motor Manufacturing of Alabama, L.L.C., Hyundai Motor America, Hyundai Motor Manufacturing Alabama, L.L.C., Hyundai Motor Company, Jaguar Land Rover North America, L.L.C., Jaguar Cars Limited, Land Rover, Kia Motors, Corp., Kia Motors America, Inc., Kia Motors Manufacturing Georgia, Inc., Mazda Motor Corporation, Mazda Motor of America, Inc., Daimler AG, Daimler North America Corporation, Mercedes-Benz U.S.A. L.L.C., Mercedes-Benz U.S. International, Inc., Nissan Motor Co. Ltd., Nissan North America, Inc., Dr. Ing. H.C. F. Porsche AG, Porsche Cars North America, Inc., Fuji Heavy Industries, Ltd., Fuji Heavy Industries U.S.A., Inc., Subaru of America, Inc., Suzuki Motor Corporation, American Suzuki Motor Corporation, Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Alabama, Inc., Toyota Motor Manufacturing Indiana, Inc., Toyota Motor Manufacturing Kentucky, Inc., Toyota Motor Manufacturing Mississippi, Inc., Toyota Motor Manufacturing Texas, Inc., Toyota Motor Manufacturing West Virginia, Inc., Volkswagen AG, Volkswagen Group of America, Inc., Volkswagen Group of America Chattanooga Operations, L.L.C., Volvo Car Corporation, and Volvo Cars of North America, L.L.C.

[2] The courts notes that the Complaint in each of the above-captioned matters is Docket Entry 1.

. [3] As detailed below, all but ten of the above-captioned fifty-six defendants have filed a Motion to Transfer to the Eastern District of Michigan. Of those ten defendants, two are the defendants in the 11-cv-953 (GMS) and 11-cv-954 (GMS) actions, which are administratively closed due to bankruptcy proceedings.

The court lists the docket entry numbers for each Motion to Transfer in the above-captioned actions here: 11-cv-921(GMS), D.I. 17; 11-cv-922 (GMS), D.I. 17; 11-cv-932 (GMS), D.I. 27; 11-cv-924 (GMS), D.I. 22; 11-cv-925 (GMS), D.I. 31; 11-cv-927 (GMS), D.I. 21; 11-cv-928 (GMS), D.I. 18; 11-cv-929 (GMS), D.I. 16; 11-cv-930 (GMS), D.I. 36; 11-cv-931 (GMS), D.I. 25; 11-cv-934 (GMS), D.I. 25; 11-cv-935 (GMS), D.I. 24; 11-cv-936 (GMS), D.I. 24; 11-cv-937 (GMS), D.I. 17; 11-cv-939 (GMS), D.I. 25; 11-cv-940, D.I. 24; 11-cv-941 (GMS), D.I. 24; 11-cv-942 (GMS), D.I. 17; 11-cv-943 (GMS), D.I. 41; 11-cv-944 (GMS), D.I. 30; 11-cv-945 (GMS), D.I. 29; 11-cv-946 (GMS), D.I. 24; 11-cv-947 (GMS), D.I. 18; 11-cv-951 (GMS), D.I. 25; 11-cv-952 (GMS), D.I. 18; 11-cv-955 (GMS), D.I. 32; 11-cv-956 (GMS), D.I. 25; 11-cv-957 (GMS), D.I. 18; 11-cv-958 (GMS), D.I. 16; 11-cv-959 (GMS), D.I. 25; and 11-cv-960 (GMS), D.I. 19.

28 U.S.C. § 1404(a).  (*See, e.g.*, 11-cv-921, D.I. 18 at 10.)  For the reasons that follow, the court

will grant the defendants' Motions to Transfer.[4]

## II.    BACKGROUND

---

[4] The court notes that Honda Motor Co., Ltd., Honda North America, Inc., American Honda Motor Co., Inc., Honda Manufacturing of Alabama, L.L.C., Honda Manufacturing of Indiana, L.L.C., and Honda of America MFG, Inc.—the defendants in Civil Action Nos. 11-cv-932 (GMS) and 11-cv-933 (GMS)—have not filed motions to transfer, though other motions have been filed and the cases are active.  The court further notes that Saab Automobile AB and Saab Cars North America, Inc.—the defendants in Civil Action Nos. 11-cv-949 (GMS) and 11-cv-950 (GMS)—have also not filed motions to transfer.  Notably, however, there have been no filings in the 11-cv-949 (GMS) and 11-cv-950 (GMS) actions since December 7, 2011 and, at present, no Answer or other motions have been docketed since that time.  The court understands, however, that the Saab entities are involved in bankruptcy proceedings.

Although these defendants did not file motions to transfer in their respective actions, the court, by this Memorandum and accompanying Order, is, *sua sponte*, transferring these four actions to the Eastern District of Michigan along with the other above-captioned defendants.  The court recognizes that it has limited, if any, authority to transfer the non-moving defendants under 28 U.S.C. §§ 1404(a)-(b), which states that "[u]pon motion, consent or stipulation of all parties" an action may be transferred.  Instead, the court transfers 11-cv-932 (GMS), 11-cv-933 (GMS), 11-cv-949 (GMS), and 11-cv-950 (GMS) to the Eastern District of Michigan under its inherent authority to manage its own docket.  The court does so because it finds the moving defendants' arguments in support of transferring these matters to be persuasive for the reasons detailed in this Memorandum.  The court does not transfer these actions with the intent to act extra-judicially or to usurp the parties' rights.  Indeed, should the non-moving defendants believe they are aggrieved by the court's action, there are vehicles by which they may seek recourse such as filing a motion for reconsideration or petition for a writ of mandamus.  The court further notes that it does not transfer the non-moving defendants with the intent to subvert the purpose and rationale of the Leahy-Smith America Invents Act ("the AIA") and, if its action does indeed undermine the AIA, the court finds this regrettable.

Rather, the court transfers these four open actions involving the non-moving defendants because it is left with no alternative but to do so in its effort to avoid an untenable result with respect to the forty-six defendants that have moved to transfer these actions.  Specifically, the moving defendants have met their burden of establishing that the private and public interest factors unique to these cases strongly favor transfer.  The goals of judicial efficiency and courts attempting to aid parties in the timely and cost-effective resolution of their civil disputes would be ill-served by permitting the open actions involving the non-moving defendants to proceed in the District of Delaware.  It is easy to imagine the spectre of any number of inconsistent rulings and outcomes raising their heads.

Having reached this conclusion, the court will not deny the motions of the forty-six moving defendants and, in so doing, allow the decisions of eight defendants in four out of thirty-eight actions, to dictate a result inconsistent with this court's findings.  Therefore, because these actions present the court with such extraordinary circumstances, the court concludes that it is jurisprudentially necessary to transfer Civil Action Nos. 11-cv-932 (GMS), 11-cv-933 (GMS), 11-cv-949 (GMS), and 11-cv-950 (GMS) to the Eastern District of Michigan along with the moving defendants in the above-captioned actions.  Another solution that presents itself might be to stay the open cases involving the non-moving defendants.  It seems, however, that this solution may only potentially delay the previously mentioned problems as well as unnecessarily postpone the resolution of all issues associated with these matters.  The court can only hope that the aforementioned parties who seem content to sit silent on the back bench will act prudently to finally join their colleagues in their transfer efforts.

The court will also transfer the Suzuki defendants—Suzuki Motor Corporation and American Suzuki Motor Corporation—in Civil Action Nos. 11-cv-953 (GMS) and 11-cv-954 (GMS).  The court references these cases separately because they were administratively closed due to bankruptcy in November 2012, to be reopened for further proceedings upon motion by any party no later than thirty days following the disposition of the Suzuki bankruptcy.  (11-cv-953 (GMS) (D.I. 39).)  The parties have not filed motions to transfer in either case, however, for the reasons of efficiency stated above, the court will transfer these cases to the Eastern District of Michigan along with the above-captioned actions.

As described in the Complaints, plaintiff Beacon is a Swiss limited liability company with a principal place of business in Switzerland. (*See, e.g.*, 11-cv-921 (GMS) (D.I. 1).) The defendants note that Beacon is the Swiss subsidiary of a Samoan parent, Beacon Navigation, Inc., and that its principal place of business is a post office box in Zug, Switzerland. (*See, e.g.*, 11-cv-921 (GMS) (D.I. 18 at 7).) According to the defendants, Beacon was formed in July 2011, three months before the filing of the above-captioned actions, through articles of incorporation signed via proxy by a Taiwanese national in Redwood Shores, California. (*Id.* (citing Parke Decl. ¶ 24; ITC Complaint at ¶ 16).) Beacon's sole business is purportedly licensing the eight patents it acquired before it initiated this litigation, as it does not manufacture or produce any products or conduct business, does not have offices or factories, and does not engage in commerce in Delaware or the United States.

A number of the defendants in the above-captioned actions are incorporated in Delaware and have their headquarters and/or principal places of business in the Eastern District of Michigan. Specifically: (1) Chrysler Group L.L.C. is a Delaware corporation and is headquartered in Auburn Hills, Michigan (11-cv-921 (GMS) & 11-cv-922 (GMS) (D.I. 18 at 7)); (2) Ford Motor Company is a Delaware corporation that is headquartered and has its principal place of business in Dearborn, Michigan (11-cv-923 (GMS) & 11-cv-924 (GMS) (D.I. 28 at 4)); (3) General Motors, L.L.C. is a Delaware corporation and has its corporate headquarters in Detroit, Michigan (11-cv-925 (GMS) & 11-cv-927 (GMS) (D.I. 32 at 3)); (4) Audi of America, Inc. is a Delaware corporation with its principal place of business in Auburn Hills, Michigan (11-cv-928 (GMS) & 11-cv-929 (GMS) (D.I. 19 at 1-2)); (5) Daimler North America Corporation is a Delaware corporation with its principal place of business in Farmington Hills, Michigan (11-cv-943 (GMS) & 11-cv-944 (GMS)

3

(D.I. 1)); and (6) Saab Cars North America, Inc. is a Delaware corporation with its principal place of business in Royal Oak, Michigan (11-cv-949 (GMS) & 11-cv-950 (GMS) (D.I. 1))[5].

In addition, eight of the defendants are incorporated in Delaware, but have their headquarters and/or principal places of business located elsewhere. Specifically: (1) Jaguar Land Rover North America, L.L.C. is a Delaware corporation with its principal place of business in Mahwah, New Jersey (11-cv-936 (GMS) & 11-cv-937 (GMS) (D.I. 1)); (2) Mercedes-Benz U.S.A., L.L.C. is a Delaware corporation with its principal place of business in Montvale, New Jersey (11-cv-943 (GMS) & 11-cv-944 (GMS) (D.I. 1)); (3) Porsche Cars North America, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia (11-cv-947 (GMS) & 11-cv-948 (GMS) (D.I. 1)); (4) Volvo Cars of North America is a Delaware corporation with its principal place of business in Rockleigh, New Jersey (11-cv-959 (GMS) & 11-cv-960 (GMS) (D.I. 1)); (5) BMW of North America is a Delaware corporation with its principal place of business in Woodcliff, New Jersey and BMW Manufacturing Co. is a Delaware corporation with its principal place of business in Greer, South Carolina (11-cv-930 (GMS) & 11-cv-931 (GMS) (D.I. 1)); (6) Hyundai Motor Manufacturing Alabama, L.L.C. is a Delaware corporation with its principal place of business in Montgomery, Alabama (11-cv-934 (GMS) & 11-cv-935 (GMS) (D.I. 1)); and (7) Kia Motors Manufacturing Georgia is a Delaware corporation with its principal place of business in West Point, Georgia (11-cv-939 (GMS) & 11-cv-940 (GMS) (D.I. 1)). In total, fourteen of the fifty-six defendants are incorporated in Delaware.

---

[5] As noted, there has been no activity since December 19, 2011 in the 11-cv-949 (GMS) and 11-cv-950 (GMS) cases in which Saab Automobile AG and Saab Cars North America, Inc. are defendants. Specifically, the court granted the parties' Joint Stipulation to Extend Time for the defendants to answer, move, or otherwise respond to the Complaint on November 14, 2011. No motions or responsive pleadings have been filed since that time. Thus, the Saab defendants have not filed motions to transfer either action.

4

A number of the defendants are not incorporated in Delaware and/or do not have their headquarters or principal place of business in the Eastern District of Michigan. These defendants are, however, incorporated and have their headquarters and/or principal place of business in the United States. Specifically: (1) Mercedes-Benz U.S. International, Inc. is an Alabama corporation with its principal place of business in Vance, Alabama. (11-cv-943 (GMS) & 11-cv-944 (GMS) (D.I. 1)); (2) Hyundai Motor America is a California corporation with its principal place of business in Fountain Valley, California (11-cv-934 (GMS) & 11-cv-935 (GMS) (D.I. 1)); (3) Kia Motors America, Inc. is a California corporation with its principal place of business in Irvine, California (11-cv-939 (GMS) & 11-cv-940 (GMS) (D.I. 26 at 2-3)); (4) Mazda Motor of America, Inc. is a California corporation with its principal place of business in Irvine, California (11-cv-941 (GMS) & 11-cv-942 (GMS) (D.I. 1)); (5) Honda North American and American Honda Motor Co., Inc. are California corporations with their principal places of business in Torrance, California; Honda Manufacturing of Alabama, L.L.C. is an Alabama corporation with its principal place of business in Lincoln, Alabama; Honda Manufacturing of Indiana, L.L.C. is an Indiana corporation with its principal place of business in Greensburg, Indiana; and Honda of America MFG, Inc. is an Ohio corporation with its principal place of business in Marysville, Ohio[6] (11-cv-932 (GMS) & 11-cv-933 (GMS) (D.I. 1)); (6) Nissan North America is a California corporation with its principal place of business at Franklin, Tennessee (11-cv-945 (GMS) & 11-cv-946 (GMS) (D.I. 1)); (7) Fuji Heavy Industries USA, Inc. and Subaru of America, Inc. are New Jersey corporations with principal places of business in Cherry Hill, New Jersey (11-cv-951 (GMS) & 11-cv-952 (GMS) (D.I. 1)); (8) American Suzuki Motor Corporation is a California corporation with its

---

[6] As the court notes above, the Honda defendants have not filed a Motion to Transfer its cases to the Eastern District of Michigan in either the 11-cv-932 (GMS) or 11-cv-933 (GMS) actions.

principal place of business in Brea, California (11-cv-953 (GMS) & 11-cv-954 (GMS) (D.I. 1))[7];

(9) for the Toyota defendants, Toyota North America and Toyota Motor Sales U.S.A. are California corporations with their principal places of business in Torrance, California; Toyota Motor Engineering & Manufacturing North America is a Kentucky corporation with its principal place of business in Erlanger, Kentucky; Toyota Motor Manufacturing Alabama is an Alabama corporation with its principal place of business in Huntsville, Alabama; Toyota Motor Manufacturing Kentucky is a Kentucky corporation with its principal place of business in Georgetown, Kentucky; Toyota Motor Manufacturing Mississippi is a Mississippi corporation with its principal place of business in Blue Springs, Mississippi; Toyota Manufacturing Texas is a Texas corporation with its principal place of business in San Antonio, Texas; and Toyota Motor Manufacturing West Virginia is a West Virginia corporation with its principal place of business in Buffalo, West Virginia (11-cv-955 (GMS) & 11-cv-956 (GMS) (D.I. 1)); and (10) Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business in Herndon, Virginia and Volkswagen Group of America Chattanooga Operations, L.L.C. is a Tennessee corporation with its principal place of business in Herdon, Virginia (11-cv-957 (GMS) & 11-cv-958 (GMS) (D.I. 1)). Moreover, Audi of America, L.L.C. is a New Jersey corporation with its principal place of business in Auburn Mills, Michigan. (11-cv-928 (GMS) & 11-cv-929 (GMS) (D.I. 1).)

Finally, there are seventeen defendants that are not incorporated and do not have their headquarters or principal place of business in the United States: (1) Daimler AG is a German corporation with its principal place of business in Stuttgart, Germany (11-cv-943 (GMS) & 11-cv-944 (GMS) (D.I. 1)); (2) Dr. Ing. H.C. F. Porsche AG is a German corporation with its principal

---

[7] As noted, the actions involving the Suzuki defendants are administratively closed due to bankruptcy proceedings and these defendants did not file motions to transfer prior to this administrative close in November 2012.

6

place of business in Stuttgart, Germany (11-cv-947 (GMS) & 11-cv-948 (GMS) (D.I. 1)); (3) Saab Automobile AB is a Swedish corporation with its principal place of business in Trollhattan, Sweden[8] (11-cv-949 (GMS) & 11-cv-950 (GMS) (D.I. 1)); (4) Volvo Corporation is a Swedish corporation with its principal place of business in Goteborg, Sweden (11-cv-959 (GMS) & 11-cv-960 (GMS) (D.I. 1)); (5) Bayerische Motoren Werke AG is a German corporation with its principal place of business in Munich, Germany (11-cv-930 (GMS) & 11-cv-931 (GMS) (D.I. 1)); (6) Hyundai Motor Co., Ltd. is a Korean corporation with headquarters in Seoul, South Korea (11-cv-934 (GMS) & 110cv0935 (GMS) (D.I. 1)); (7) Kia Motor Corporation is a Korean corporation with its headquarters in Seoul, South Korea (11-cv-939 (GMS) & 11-cv-940 (GMS) (D.I. 1)); (8) Jaguar Cars Limited and Land Rover are United Kingdom corporations with their principal places of business in the United Kingdom (11-cv-936 (GMS) & 11-cv-937 (GMS) (D.I. 1)); (9) Mazda Motor Corporation is a Japanese corporation with its principal place of business in Hiroshima, Japan (11-cv-941 (GMS) & 11-cv-942 (GMS) (D.I. 1)); (10) Honda Motor Co. Ltd.[9] is a Japanese corporation with its principal place of business in Tokyo, Japan (11-cv-932 (GMS) & 11-cv-933 (GMS) (D.I. 1)); (11) Nissan Motor Co. is a Japanese corporation with its principal place of business in Kanagawa, Japan (11-cv-945 (GMS) & 11-cv-946 (GMS) (D.I. 1)); (12) Fuji Heavy Industries, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan (11-cv-951 (GMS) & 11-cv-952 (GMS) (D.I. 1)); (13) Suzuki Motor Corporation is a Japanese corporation with its principal place of business in Hamamatsu City, Japan (11-cv-953 (GMS) & 11-cv-954 (GMS) (D.I. 1))[10]; (14) Toyota Motor Corporation is a Japanese corporation with its principal place of business in Toyota City, Japan (11-cv-955 (GMS) & 11-cv-956 (GMS) (D.I. 1));

---

[8] *See supra* note 5.
[9] *See supra* note 6.
[10] *See supra* note 7.

(15) Volkswagen AG is a German corporation with its principal place of business in Wolfsburg, Germany (11-cv-957 (GMS) & 11-cv-958 (GMS) (D.I. 1)); and (16) Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany (11-cv-928 (GMS) & 11-cv-929 (GMS) (D.I. 1)).

This patent infringement action involves Global Positioning Satellite ("GPS") technology, that is found in automobile in-dash and portable navigational devices. Beacon contends that the defendants' accused products infringe one or more claims of U.S. Patent Nos. 6,029,111 ("the '111 Patent"); 6,360,167 ("the '167 Patent"); 6,374,180 ("the '180 Patent"); 5,819,201 ("the '201 Patent"); 6,163,269 ("the '269 Patent"); 5,878,368 ("the '368 Patent"); and/or 5,862,511 ("the '511 Patent") (collectively, "the patents-in-suit"). (*See, e.g.*, 11-cv-921 (GMS) (D.I. 1 at ¶¶ 5-28).) Specifically, Beacon claims that the defendants infringe the asserted claims of the patents-in-suit: (1) literally and/or under the doctrine of equivalents, directly, contributorily, or by inducement; (2) directly, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that practice the patent; (3) by contributing to direct infringement of others, in violation of 35 U.S.C. § 271(b), because the GPS navigational systems in its products are specifically adapted for an infringing use, embody a material part of the inventions claimed, and are not staple articles of commerce suitable for a noninfringing use; and/or (4) by actively inducing others—namely, consumers—to directly infringe these patents in violation of 35 U.S.C. § 271(c), by providing products with GPS navigation systems, along with instructions, user manuals, and/or technical assistance actively directing, encouraging, or assisting infringement. (*Id.*)

## III. STANDARD OF REVIEW

8

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision "was intended to vest district courts with broad discretion to determine on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

Section 1404(a) sets forth a two-step transfer analysis. The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience. *See Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *4 (D. Del. Aug. 20, 2012). The burden then rests with the defendant to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879-80, and, "unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 41 F.2d 22, 25 (3d Cir. 1970) (citing *Owatonna Manufacturing Co. v. Melore Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

## IV.    DISCUSSION

Consistent with the two-step analysis detailed above, the court will first address the question of whether this suit might have been brought in the proposed transferee forum, the U.S. District Court for the Eastern District of Michigan. The court will then assess whether the balance of convenience favors transfer, consistent with the various private and public factors the Third Circuit outlined as the appropriate examination in *Jumara v. State Farm. Insurance*.[11]

---

[11] 55 F.3d 873, 883 (3d Cir. 1995).

9

## A. The Propriety of the Transferee Forum

The court may only transfer an action to a "district or division where it might have been brought." *See* 28 U.S.C. § 1404(a). Accordingly, the court may only grant the defendants' motions to transfer to the Eastern District of Michigan if venue would have been proper there and if that district could have exercised personal and subject matter jurisdiction in each of the above-captioned actions. *See* 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

The defendants argue, and Beacon does not dispute,[12] that these actions could have been brought in the Eastern District of Michigan. As noted, fourteen of the fifty-six defendants are incorporated in the State of Delaware but maintain their principal places of business in Michigan. While not all defendants are incorporated or have their principal place of business in Michigan, such that each has a physical presence in and/or corporate ties to the State, Beacon acknowledges that, because the defendants' sale activities have been directed to all judicial districts, venue would be proper in the Eastern District of Michigan. In addition, several defendants support their assertion that venue is proper in that District by detailing in their Motions to Transfer that they operate facilities, employ workers, receive navigational technology from third-party supplies, and/or direct sales to the Eastern District of Michigan.[13]

---

[12] *See, e.g.*, 11-cv-930 (GMS) (D.I. 47 at 6.) ("Given the nationwide scope of the defendants' infringement, and the defendants' sales activities directed to all judicial districts, Beacon does not dispute that venue would have been proper in the Eastern District of Michigan if these cases had been filed there.").

[13] For instance: (1) the Daimler/Mercedes defendants receive their GPS technology from third-party suppliers, all of which are located in the Eastern District of Michigan (11-cv-943 (GMS) & 11-cv-944 (GMS) (D.I. 42 at 8)); (2) the Porsche defendants assert that they receive their GPS technology from third-party suppliers, all of which are located in the Eastern District of Michigan (11-cv-947 (GMS) & 11-cv-948 (GMS) (D.I. 26 at 3-4)); (3) the Volvo defendants note that they do not have offices in Delaware, but do import the accused vehicles equipped with GPS technology into the United States and offers them for sale at dealerships throughout the country, including dealerships in the Eastern District of Michigan (11-cv-959 (GMS) & 11-cv-960 (GMS) (D.I. 20 at 3)); (4) the Ford defendants note that their principal research, development, testing, and marketing facilities are located in the Eastern District of Michigan along with their GPS navigational system third-party suppliers (11-cv-923 (GMS) & 11-cv-924 (GMS) (D.I. 28 at 7-8)); (5) General Motors' Eastern District of Michigan facilities include its technical center, which houses engineering and development for its vehicles, including those related to GPS navigational technology and

10

The court, therefore, has little difficulty concluding that these suits might have been brought in the proposed transferee forum because venue would be proper. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendants resides, or where the defendant has committed acts of infringement and has a regular and established place of business."); *see also* § 1391(c) ("For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."). Similarly, subject matter jurisdiction would exist under 28 U.S.C. § 1338, which provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents." § 1338(a). Thus, the court finds that these actions might

---

employs more than 20,000 people (11-cv-924 (GMS) & 11-cv-925 (GMS) (D.I. 32 at 3-4)); (6) the Audi and Volkswagen defendants indicate that they maintain technical operations and many other departments in Auburn Hills, Michigan, including Quality and Technical Services, Engineering & Environmental, Parts, Compliance, Group Quality, Safety Affairs, Customer Relations, and Group After Sales, among other departments (11-cv-928 (GMS) & 11-cv-929 (GMS) (D.I. 17 at 2-3)); (7) the BMW defendants operate dealerships around the nation, including nine in Michigan, five of which are in the Eastern District, and receive their GPS navigational technology from third-party suppliers in the Eastern District of Michigan (11-cv-930 (GMS) & 11-cv-931 (GMS) (D.I. 41 at 2-3)); (8) the Hyundai defendants detail that they manufacture and sell vehicles for distribution throughout the United States, including various dealerships located in the Eastern District of Michigan and, further, that they operate a center for designing and planning Hyundai and Kia automobiles in that District (11-cv-934 (GMS) & 11-cv-935 (GMS) (D.I. 26 at 8-9)); (9) the Kia defendants note that they manufacture and sell vehicles for distribution throughout the United States and receive their GPS navigational technology from third-party suppliers in the Eastern District of Michigan (11-cv-939 (GMS) & 11-cv-940 (GMS) (D.I. 26 at 3-4)); (10) the Jaguar defendants sell their vehicles throughout the United States, including in the Eastern District of Michigan (11-cv-936 (GMS) & 11-cv-937 (GMS) (D.I. 25 at 2-3)); (11) the Mazda defendants detail that they have owned, or at least partially have owned, a factory in the Eastern District of Michigan since 1985 and that, since production commenced in 1987, the facility has produced more than 1.7 million Mazda vehicles (11-cv-941 (GMS) & 11-cv-942 (GMS) (D.I. 25 at 2-3)); (12) the Nissan defendants have their principal research and development center, which employs 800 people, located in Farmington Hills, Michigan (11-cv-945 (GMS) & 11-cv-946 (GMS) (D.I. 30 at 3-4)); (13) the Fuji and Subaru defendants state that they sell vehicles throughout the United States, including the Eastern District of Michigan (11-cv-951 (GMS) & 11-cv-952 (GMS) (D.I. 26 at 3)); (14) the Toyota defendants employ approximately 1,100 people in the state, are indirectly responsible for the creation of nearly 6,000 jobs through its business with dealers and suppliers, and operates the North American Toyota Technical Center, a division of Toyota Motor Engineering & Manufacturing North America, Inc. and its Toyota Research Institute of North America, in Ann Arbor, Michigan (11-cv-955 (GMS) & 11-cv-956 (GMS) (D.I. 33 at 3-4)); and (15) the Volkswagen defendants note that it operates facilities in Auburn Hills, Michigan (11-cv-957 (GMS) & 11-cv-958 (GMS) (D.I. 19 at 2-3)). In addition, each defendant that has a filed a motion to transfer, alleges that it receives its GPS navigation technology from third-party suppliers located in the Eastern District of Michigan.

11

have been brought originally in the proposed transferee forum and will, therefore, proceed to the second step of the transfer analysis.

## B. The *Jumara* Analysis

The court next must consider whether transferring these cases to the Eastern District of Michigan would serve the interests of convenience and justice. The Third Circuit has instructed that courts considering a transfer motion should perform a case-by-case analysis, rather than apply a "definitive formula." *See Jumara*, 55 F.3d at 879. This assessment should take into account the various public and private interests protected and defined in § 1404(a). The private interests may include:

> Plaintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80. The court addresses each of these "*Jumara* factors" in turn.

1. Private Interest Factors

a. *Plaintiff's forum preference*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Id.* at 879. The defendants argue that Beacon's choice of forum is entitled to little weight, because Beacon has chosen to litigate in Delaware, which is not its "home turf" and is a forum with little connection to the case. Beacon responds that it selected Delaware as the

12

forum for these cases "in an attempt to achieve the efficiency that would result from litigating against each of the automakers in a single jurisdiction." *(See, e.g.*, 11-cv-922 (D.I. 21 at 7).) Beacon also notes, as detailed above, that Delaware is the state of incorporation for fourteen of the defendants accused of infringement. *(Id.)* Finally, Beacon asserts that the defendants' interest in transferring to the Eastern District of Michigan is "purely tactical, obviously based on their belief that they are likely to be favored in the traditional center of the American automotive industry." *(Id.)*

While this factor is often granted significant weight in the § 1404(a) convenience analysis, the court has recognized that the plaintiff's forum preference merits less deference when the plaintiff has chosen to file suit outside its "home turf." *See, e.g., Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013); *Smart Audio Techs., L.L.C. v. Apple, Inc.*, No. 12-134 (GMS), 2012 WL 5865742, at *1 (D. Del. Nov. 16, 2012); *see also In re Link_A_Media Devices, Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011) ("When a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference."). As such, the forum selection here is not deserving of "paramount" consideration. *Smart Audio Techs.*, 2012 WL 5865742, at *6-7. The court will, however, accord Beacon's choice of forum decision some degree of heightened deference given its underlying rationale and legitimate basis for this selection.

### b. *Defendants' forum preference*

The next private interest factor is the defendants' forum preference. *See Jumara*, 55 F.3d at 879. In the above-captioned actions, each defendant that has filed a motion to transfer, has clearly indicated a preference of litigating in the Eastern District of Michigan because, by and

13

large, the defendants are headquartered, operate facilities, manufacture, and/or sell products in that district.[14] This factor weighs in favor of transfer.

### c. *Whether the claim arose elsewhere*

The third private interest factor the court must consider is "whether the claim arose elsewhere." *Id.* "[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.*, 2012 WL 5865742, at *7. Accordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral.

The court, however, has acknowledged that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (quoting *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012)). Here, a number of the defendants detail that they operate research and manufacturing facilities in the Eastern District of Michigan, are headquartered or maintain their principal place of business there, direct their allegedly infringing products to Michigan consumers, and/or received or installed the GPS technology and navigational systems in that District.[15] Thus, the court believes this factor weighs lightly in favor of transfer.

### d. *Convenience of the parties*

The court must also determine whether the proposed transferee forum would be more convenient for the parties. *See Jumara*, 55 F.3d at 879. In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical

---

[14] *See supra* note 13.

[15] *See supra* Section II; *see also supra* note 13.

14

and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (internal quotation omitted). Thus, the court is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

The defendants maintain that litigating in the Eastern District of Michigan is more convenient, because each of the following are located in Michigan: (1) all but one of the inventors of the patents-in-suit; (2) all prosecuting attorneys and law firms involved in the patent prosecution; (3) the prior assignees of the patents-in-suit; (4) the majority of the defendants' GPS navigational systems and technology suppliers; and (5) the majority of the defendants' employees and documents. Moreover, the defendants note that neither Beacon, nor the defendants, have witnesses, documents, facilities, or offices in Delaware. (*See, e.g.*, 11-cv-921 (D.I. 26 at 1).) Conversely, Beacon argues that the defendants have not demonstrated that the facts of this case strongly favor transfer. Specifically, Beacon asserts that the defendants: (1) have failed to "link" the evidence in Michigan that they reference—their operations, the inventors, prior assignees, third-party supplier witnesses, or employee witnesses—"to the issues in this case" (*See, e.g.*, 11-cv-21 (GMS) (D.I. 21 at 3-4)); (2) have not demonstrated that the witnesses and evidence they cite would be unavailable in Delaware; and (3) therefore, have failed to meet the transfer requirements.

The court is not entirely persuaded by the arguments of either side with regard to this factor. First, and with respect to the court's consideration of the parties' physical location, Beacon states in its Complaints that it is a Swiss company and that its principal place of business is located in Switzerland. (*See, e.g.*, 11-cv-921 (GMS) (D.I. 1).) Moreover, the defendants assert, and Beacon

15

does not challenge, that Beacon does not maintain offices or employees in Delaware.  Therefore, Beacon will be required to travel during this litigation, regardless of the court's decision on the instant motions.  Similarly, it appears from the defendants' briefing that they too will have to travel, should the court deny their motions.  Specifically, each of the defendants state that they do not maintain offices or facilities in Delaware, but, instead, operate out of other jurisdictions.  As a result, the defendants[16] seek transfer to the Eastern District of Michigan because: (1) it is the location of their headquarters, principal place of business, research facilities, manufacturing facilities, and/or, at the very least, a state in which they engage in consumer sales[17]; and (2) relevant witnesses, including inventors, prior assignees, and suppliers, among others, are located there.

Second, and with respect to the "associated logistical and operational costs" to the parties' employees in traveling to Delaware, neither party directly argues that it would be unable to travel to Michigan or Delaware for purposes of this litigation.  While Beacon does not argue that transferring the litigation to Michigan will increase its travel costs, it is reasonable to assume that its travel costs may increase, though that increase cost of traveling to Michigan instead of Delaware may not be significant.  Similarly, should the court deny the defendants' motions, it is also reasonable to assume that the defendants' litigation costs would increase if the litigation continues in Delaware and the Michigan-located witnesses and evidence they reference in their briefs are, in fact, required.

Finally, regarding the "relative ability of each party to bear these costs in light of its size and financial wherewithal," neither side meaningfully addresses this factor.  While the court can presume that the defendants have considerable financial resources, the court is cognizant of the

---

[16] As noted, the Honda and Saab defendants have not filed motions to transfer the case.

[17] The court notes that all defendants—even those without a principal place of business, headquarters, or incorporation in Michigan—maintain that the Eastern District of Michigan would be the more convenient forum to litigate the instant action.

16

inevitable costs and disruptions that litigation and travel can impose. As noted, Beacon will be required to travel regardless of where the litigation takes place and may have slightly higher travel costs if the litigation were to proceed in Michigan instead of Delaware. Unfortunately, the court cannot adequately assess the "relative ability of each party to bear these costs." As such, the court can merely conclude that an adverse transfer decision will subject both sides to some degree of added inconvenience. However, even assuming that there is some financial disparity between the parties—though no such evidence is presented—it is possible that, due to Beacon's small size and because it is a single party, its travel costs may prove less than the defendants because the defendants, as larger entities, may have to send more employees to Delaware for trial and other proceedings. The court would ordinarily find that this factor weighs slightly in favor of transfer.

Beacon notes, however, that fourteen of the fifty-six defendants are incorporated in Delaware and, therefore, have submitted to suit in this district. (*See, e.g.*, 11-cv-922 (D.I. 21 at 7).) Indeed, a fellow Delaware district court has recognized that "a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I, L.L.C. v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012); *see also AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012) ("[T]he court finds it significant that [the defendant] is a Delaware corporation and has necessarily consented to suit in this jurisdiction."). Importantly, however, not all defendants have chosen to incorporate in Delaware. In fact, forty-two of the defendants against whom Beacon has brought suit are incorporated elsewhere, as outlined above. Moreover, the court recognizes *In re Link_A_Media*'s general warning to avoid weighing a defendant's state of incorporation too heavily in the transfer analysis. Nevertheless, with respect to the fourteen defendants that

17

incorporated in Delaware, the court finds that the inconvenience of those defendants litigating here is somewhat less than it would ordinarily presume it to be.

As such, the court finds this factor to be neutral with respect to the fourteen defendants incorporated in Delaware and finds this factor to weigh in favor of transfer for the non-Delaware incorporated defendants.

### e. *Convenience of the witnesses*

The next *Jumara* factor the court must consider is the "the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. Importantly, in this assessment, "[p]arty witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Moreover, to demonstrate that a witness or witnesses "may actually be unavailable for trial," it is sufficient for the moving party to state that likely witnesses reside beyond the court's subpoena power and there is reason to believe that the witness will refuse to testify absent a subpoena. *See Smart Audio Techs.*, 2012 WL 5865742, at *8 ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena."); *see also AIP Acquisition*, 2012 WL 5199118, at *4. To this end, simply stating that a witness would be unavailable because he or she is outside the subpoena power of a court is, without more, insufficient.

Here, the defendants argue that this factor strongly favors transfer to the Eastern District of Michigan because: (1) the majority of relevant third-party supplier witnesses, eight of the nine inventors of the patents-in-suit, the attorneys who prosecuted the patents-in-suit, and the assignees of the patents-in-suit are all located in the proposed district; (2) these potential witnesses are not

18

employed by the defendants and are "outside of this Court's subpoena power, but are within the subpoena power of the Eastern District of Michigan" (*see, e.g.*, 11-cv-921 (D.I. 18 at 8)); (3) these potential witnesses are the types of witnesses "commonly recognized as important parties in patent cases"[18] (*see, e.g.*, 11-cv-921 (D.I. 21 at 2)); and (4) courts "should be particularly concerned not to countenance undue inconvenience to third-party witnesses, who have no direct connection to the litigation (*id.* (citing *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 451 (D. Del. 2012) (citation omitted)).

In response, Beacon asserts that the defendants have failed to establish this factor in their favor because they have not demonstrated: (1) that the witnesses they reference will, in fact, testify at trial; and (2) that the witnesses, if needed, will be unavailable. The court agrees. As noted, it is insufficient for a party to establish this factor by simply noting that the witness is outside the subpoena power of a court. Rather, it is necessary to demonstrate why there is reason to believe that the witness will not testify without being subpoenaed. Here, because the defendants have not identified a single witness who would be available in the Eastern District of Michigan, but would not be available in the District of Delaware, the court finds this factor has not been established and is neutral.

f. *Location of books and records*

---

[18] In support of this argument, the defendants cite a number of cases to establish the relevancy of these potential witnesses' testimonies. *See e.g., Pragmatus AV, L.L.C. v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2012 U.S. Dist. LEXIS 147834, at *34 (D. Del. Oct. 15, 2012) ("The Court can assume that the third party witnesses that Yahoo! has named, particularly the inventors of the patents-in-suit, will be likely to provide relevant testimony in this case."); *Fuisz Pharma L.L.C. v. Theranos, Inc.*, C.A. No. 11-1061-SLR-CJB, 2012 U.S. Dist. LEXIS 69835, at *47-48 (D. Del. May 18, 2012) (noting that "third party witnesses, including the attorneys who prosecuted the patents-in-suit" may testify at trial, though recognizing that it is unlikely they would do so because "so few civil cases today proceed to trial"); *3Com Corp. v. D-Link Sys.*, C.A. No. 03-014-GMS, 2003 U.S. Dist. LEXIS 7120, at *5-6 (D. Del. Apr. 25, 2003) (identifying such third party witnesses as employees of manufacturers of the accused products, the inventors of the accused products, and a prosecuting attorney as relevant in a patent infringement case and concluding that the presence of these individuals in the proposed transferee forum, weighed in favor of transfer).

19

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. The defendants assert that much of the evidence relevant in this case will be located in the Eastern District of Michigan due to either their own physical presence in Michigan or the location of their third-party suppliers in that state. Conversely, Beacon argues that this factor should weigh against transfer because the defendants: (1) have not alleged that they would be unable to present this evidence in Delaware; and (2) have not established how the evidence to which they refer actually relates to the instant suit. Specifically, and similar to the argument it advanced in connection with the "convenience of witnesses" factor, Beacon maintains that the defendants have failed to detail which records are located in the Eastern District of Michigan or that they will be introduced into evidence. The court disagrees with both of Beacon's arguments.

First, the court recognizes that, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer" and, "[c]onsequently, the place where the defendants' documents are kept weighs in favor of transfer to that location." *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Smart Audio Techs.*, 2012 WL 5865742, at *9. Notably, though modern technology relating to the electronic storage and transfer of documents reduces the significance of this factor, the court nevertheless must assign it some weight in the *Jumara* analysis. *See In re Link_A_Media Corp.*, 662 F.3d at 1224; *Smart Audio Techs.*, 2012 WL 5865742, at *9. Second, the court disagrees with Beacon's contention that the defendants have failed to establish that the documents it asserts are in Michigan are, in fact, relevant to this litigation. Specifically, and as noted above in connection with the "conveniences of the witnesses" factor, the documents or records of the inventors, prosecuting attorneys, prior

assignees, and/or suppliers the defendants reference are commonly recognized as important parties—and by extension documents—in patent cases.[19]

Thus, the court finds that this factor weighs slightly in favor of transfer.

2. Public Interest Factors

The parties limit their briefing on the public interest factors to: (1) practical considerations; (2) relative administrative difficulty; and (3) local interests.[20] Thus, the court will assess only those factors the parties addressed in their submissions.

a. *Practical considerations*

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Beacon contends that judicial economy and efficiency warrant denying the defendants' motions to transfer "because all cases involving [its] claims of patent infringement are currently in Delaware." (*See, e.g.*, 11-cv-921 (D.I. 21 at 11).) Specifically, Beacon argues that, should the court "transfer some, but not all, of the cases, there will be a need to litigate and presumably try similar, or identical, issues in multiple jurisdictions." (*Id.*) This, Beacon asserts, would result in a "piecemeal and duplicative approach" to the litigation and would subvert judicial efficiency and economy. (*Id.*)

In response, the defendants challenge Beacon's contention by noting that the defendants in thirty-five of the thirty-eight cases have filed motions seeking transfer to the Eastern District of Michigan and, therefore, that its concerns of "piecemeal" or "duplicative" litigation are not relevant if the court transfers each case to the same requested forum. Moreover, defendants argue that the Leahy-Smith America Invents Act ("AIA") was designed to alleviate "problems

---

[19] *See supra* note 18.

[20] Specifically, the parties do not dispute the public interest factors addressing: (1) enforceability of the judgment; (2) the public policies of the prospective fora; and (3) the familiarity of the court with the applicable law.

occasioned by the joinder of defendants . . . who have tenuous connections to the underlying disputes in patent infringement suits"[21] and, in so doing, prevents the manipulation of venue analysis based on arguments of judicial economy even in scenarios "involving serially filed suits against multiple defendants in a forum." *(See, e.g.,* 11-cv-921 (GMS) (D.I. 21 at 6 (citing *Bradywine Communs. Techs. v. AT&T Corp.*, No. 6:12-cv-283-Orl-36-DAB, 2012 U.S. Dist. LEXIS 66116, at \*17-19 (M.D. Fla. Apr. 25, 2012)).) To this end, the defendants assert that Beacon's emphasis on keeping all of the above-captioned matters in the same venue is foreclosed post-AIA. *(See, e.g.,* 11-cv-921 (GMS) (D.I. 21 at 6).)

The court agrees with the defendants that if the court grants, as it does here, the defendants' motions to transfer the above-captioned matters to the Eastern District of Michigan, concerns of judicial inefficiency are negated because all cases involving the technology at issue will be resolved in the same forum. The court also notes that the transfer of the above-captioned matters to the Eastern District of Michigan achieves Beacon's stated objective in selecting Delaware as its preferred forum—all of the cases will be tried in one location.

In addition, the defendants argue, for essentially the same reasons advanced in connection with the "convenience of the parties," "convenience of the witnesses" and "location of books and records" private interest factors detailed above, that trial in the Eastern District of Michigan would prove less expensive than proceeding with trial in the District of Delaware, where neither the defendants nor Beacon have employees or maintain offices or facilities and no witnesses or documents are located. For largely the same reasons it explained in the private interest factors analysis above, the court agrees with the defendants again here and concludes that this "practical consideration" public interest factor also counsels transfer.

---

[21] *See* H.R. Rep. No. 112-98, pt. 1, at 54 (2011); *see also* Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011).

22

### b. *Relative administrative difficulty*

The court also considers "the relative administrative difficulty in the two fora resulting from court congestion." *Juumara*, 55 F.3d at 879. On this point, the defendants assert, and Beacon does not challenge, that the Eastern District of Michigan's docket is less congested than the District of Delaware's docket. Specifically, the defendants report that cases in the Eastern District of Michigan proceed to trial in an average of 23.4 months, while cases in the District of Delaware reach trial in 28.1 months. *(See, e.g.*, 11-cv-921 (D.I. 21 at 9 (citing Federal Court Management Statistics, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (last visited Oct. 15, 2012)).) In view of this statistic, the court finds that the "relative administrative difficulty" factors weighs lightly in favor of transfer.

### c. *Local interests*

Finally, the transfer analysis requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. The defendants maintain that the local interest in this matter favors transfer for such reasons as (1) some of the defendants employ local workers in Michigan; (2) the automobile industry is the "lifeblood of that region"; and (3) because Beacon filed suit against every major automaker that sells automobiles in the United States, there is the "utmost local interest to the people of the Eastern District of Michigan, whose livelihoods rely on that industry." *(See, e.g.*, 11-cv-921 (GMS) (D.I. 18 at 9).) Therefore, defendants assert, the Eastern District of Michigan has a "stronger and more significant relationship to the dispute than the District of Delaware." *(Id.* at 9-10.)

Conversely, Beacon contends that the local interest does not favor transfer for two reasons. First, Beacon notes that, because these actions involve claims of patent infringement and federal law, there is no local interest at issue in any case. Second, Beacon argues that the defendants'

23

motions should not be granted because, for the reasons detailed above, they seek transfer in order

to obtain a favorable jury verdict in a venue sympathetic to their interests. *(See, e.g.,* 11-cv-947

(GMS) (D.I. 23 at 8).)

The court, however, has recently concurred with the position Judge Robinson expressed on

this issue in *Helicos Biosciences Corp. v. Illumina, Inc.*, wherein she explained:

> [P]atent litigation does not constitute a local controversy in most cases. Patent
> cases implicate constitutionally protected property rights. The resolution of patent
> cases is governed by federal law reviewed by courts of national (as opposed to
> regional) stature. Moreover, to characterize patent litigation as "local" undermines
> the appearance of neutrality that federal courts were establish to provide and flies
> in the face of the national (if not global) markets that are affected by the outcome
> of these cases.

858 F. Supp. 2d 367, 375 (D. Del. 2012). Thus, this factor is typically neutral in the context of

patent litigation because patent issues usually "do not give rise to a local controversy or implicate

local interests." *TriStrata Tech., Inc. v. Emulgen Labs, Inc.*, 537 F. Supp. 2d 635, 643 (D. Del.

2009).

Here, the court is not convinced by the defendants' argument that there is a local interest

in this action in the Eastern District of Michigan that would weigh in favor of transfer. Rather,

while there may well be a "local interest" in Michigan, the court disagrees that this interest

represents a "local controversy" in the traditional sense. The above-captioned actions are governed

by federal law, brought against national and, in some of the actions, international corporations,

and concerns a product that is sold nationwide. In view of these considerations, the court finds

that these actions are appropriately characterized as implicating a national, rather than a local,

controversy.

Moreover, with respect to Beacon's assertion that the defendants seek transfer to obtain a

more favorable verdict, the court rejects the position that this assertion weighs against transfer.

24

Specifically, and for the reasons expressed in the excerpted language from Judge Robinson above, federal courts provide a neutrality that negates such concerns, particularly in cases such as these, which involve a national controversy.  Therefore, the court finds the local interest factor to be neutral.

     3.  *Jumara* Analysis Summary

Considering the *Jumara* factors as a whole, the court believes that the defendants in each of the above-captioned actions have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer.  Notably, only Beacon's forum preference weighs against transfer, and that preference was not afforded maximum deference in these cases.  On the other hand, several factors counsel transfer: the defendants' forum choice; the location where the claim arose; the convenience of the parties; the location of relevant books and records; and practical considerations that might make trial easy or inexpensive.

## V.    CONCLUSION

For the foregoing reasons, the court will grant the defendants' motions to transfer venue to the Eastern District of Michigan.

March 20, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

25